Jonathan M. Rotter (SBN 234137)
Danielle L. Manning (SBN 313272)
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: jrotter@glancylaw.com
Email: dmanning@glancylaw.com

*Attorneys for Plaintiff and the Proposed Class*

[*Additional counsel on signature page*]

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RIGO AMAVIZCA, Individually and on Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| vs. | 1. VIOLATIONS OF CALIFORNIA UNFAIR COMPETITION LAW (Cal. Bus. & Prof. Code § 17200, *et seq.*); |
| NUTRA MANUFACTURING, LLC, and INTERNATIONAL VITAMIN CORPORATION, | 2. VIOLATIONS OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT (Cal. Civ. Code § 1750 *et seq.*); |
| Defendants. | 3. VIOLATIONS OF CALIFORNIA FALSE ADVERTISING LAW (Cal. Bus. & Prof. Code §§ 17500, *et seq.*); |
| | 4. BREACH OF WARRANTY; |
| | 5. UNJUST ENRICHMENT. |
| | **DEMAND FOR JURY TRIAL** |

Plaintiff, Rigo Amavizca ("Plaintiff"), brings this action against Nutra Manufacturing, LLC ("Nutra") and International Vitamin Corporation ("IVC") (each a "Defendant" and collectively "Defendants") and alleges on information and belief, except as to the allegations that pertain to the Plaintiff, which are based on personal knowledge, as follows:

## INTRODUCTION

1.     Market experts estimate the size of the global dietary supplements market in 2019 to be $123.28 billion, expanding at 8.2% compound annual growth rate.  In 2019, North America accounted for 38% of the total market share in terms of revenue. Glucosamine is one of the most commonly purchased dietary supplements available on the market, which some researchers believe will grow to a market of more than $750 million by 2022.

2.     Glucosamine is commonly sold in two formulations: glucosamine sulfate ("Glucosamine Sulfate") and glucosamine hydrochloride ("Glucosamine Hydrochloride").

3.     Many consumers choose Glucosamine Sulfate because it is believed to be the more effective version of glucosamine. It also commands a premium on price.

4.     Plaintiff purchased a bottle of non-party GNC's brand "Glucosamine Sulfate 550," a private label dietary supplement manufactured and/or distributed for non-party GNC by Nutra and/or IVC.  The product Plaintiff purchased states on its ingredient label that each serving contains 550mg of d-Glucosamine Sulfate, 2NaCl and 55mg of Sodium per tablet. However, laboratory testing confirms that the product Plaintiff purchased, and other products manufactured and/or distributed by Defendants Nutra and/or IVC that represent that they contain Glucosamine Sulfate, do not, in fact, contain Glucosamine Sulfate.

5.     Nutra and/or IVC manufacture and/or distribute dietary supplements that are simply not what they claim to be.

CLASS ACTION COMPLAINT

6.     As against Defendant Nutra, Plaintiff brings this class action on behalf of himself and all purchasers of any products manufactured and/or distributed by Defendant Nutra that represent on their labeling that they contain Glucosamine Sulfate ("Glucosamine Sulfate Products") for violations of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*.; the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq*.; and the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq*. (the "California Class").  As against Nutra, Plaintiff also brings this class action on behalf of himself and all purchasers in the United States of such Glucosamine Sulfate Products for breach of warranty and unjust enrichment (the "Nationwide Class").

7.     As against IVC, Plaintiff brings this class action on behalf of the Nationwide Class of all purchasers of any products manufactured and/or distributed by Defendant IVC that represent on their labeling that they contain Glucosamine Sulfate ("Glucosamine Sulfate Products") for violations of the UCL, CLRA, and FAL, and for breach of warranty and unjust enrichment.

8.     Plaintiff demands a combination of damages and injunctive relief.

## PARTIES

9.     Plaintiff, Rigo Amavizca, is a citizen of California.  Mr. Amavizca is domiciled in Los Angeles County.

10.     Defendant Nutra Manufacturing, LLC is incorporated in Delaware and headquartered in Greenville, South Carolina.  According to its website, Nutra "is one of the largest manufacturers of dietary supplements in the world." https://www.nutramfg.com/about-us/ (last visited June 24, 2020). According to non-party GNC's website, "GNC manufactures its own private-label products under its manufacturing arm, [Nutra]. Nutra, located in Greenville, S.C., is dedicated to producing the highest-quality supplements using the latest technology in state-of-the-art facilities." https://www.gnc.com/quality-you-can-trust.html (last visited June 24,

2020).  Upon information and belief, Nutra's predecessor corporation, Nutra Manufacturing, Inc., was converted to a limited liability company by Certificate of Conversion filed with the Delaware Secretary of State on February 26, 2019 and effective February 27, 2019.

11.    Defendant IVC is incorporated in Delaware and headquartered in Irvine, California.  From facilities in California, IVC manufactures and/or supplies various dietary supplements to brands and/or retailers in California and nationwide, including, upon information and belief, private label store brands. According to IVC, "IVC operates facilities in California and New Jersey to produce tablets, caplets, chewables and two-piece capsules. These facilities are responsible for producing products for some of the largest and most reputable retail chains and nutritional name brands in America and throughout the world." "What We Do," IVC, http://www.ivcinc.com/what-we-do/ (last visited June 24, 2020).

12.    On March 1, 2019, non-party GNC entered into an agreement with IVC to sell Nutra to IVC through a series of transactions.  See GNC Holdings, Inc., Form 8-K, filed with the United States Securities and Exchange Commission on March 7, 2019.  At the time of the transaction, IVC paid non-party GNC $101 million for a 57.14% stake in Nutra.  In time, IVC is expected to purchase the remaining 42.86% of Nutra for $75 million.  On its website, Nutra now represents itself as "an IVC company."

13.    The Supply Agreement between Nutra and a subsidiary of non-party GNC entered on March 1, 2019 confirmed that Nutra would supply non-party GNC's private label products.  The Supply Agreement states that Nutra is responsible for testing and ensuring that all raw materials meet the required specifications, as well as testing and quality control of the final products.  Supply Agreement, ¶¶ 3.4, 3.7.

14.    Each of the Defendants claim that they follow the highest guidelines to ensure quality.  Nutra claims: "Our quality standards meet and exceed the industry requirements. . . . All products produced by Nutra Manufacturing are subjected to our

extensive quality system which starts with raw material assessment, testing and selection during the development process. All incoming raw materials are sampled, tested, and released prior to use in manufacturing, which is executed in accordance with all applicable regulations. We also test the finished good in our on-site, cGMP compliant chemistry and microbiology laboratories." https://www.nutramfg.com/32-2/ (last visited June 24, 2020). Similarly, IVC claims that it has "an outstanding reputation for quality" and "conducts rigorous and frequent tests on raw materials, finished products and packaging." http://www.ivcinc.com/the-ivc-difference/quality/ (last visited June 24, 2020).

## JURISDICTION AND VENUE

15.     This Court has original jurisdiction over this action, pursuant to 28 U.S.C. § 1332, in that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and Plaintiff is a citizen of California and at least one Defendant is a citizen of a different state. In addition, the matter in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, and is a class action of more than 100 potential Class members in which some Class members are citizens of a state different from Defendant(s).

16.     Venue properly lies in this district pursuant to 28 U.S.C. § 1391 because Plaintiff resides in and Defendants have transacted substantial business within this District within the meaning of 28 U.S.C. § 1391, and because a substantial part of the events giving rise to the claims alleged herein occurred in this District.

## FACTUAL ALLEGATIONS

### Glucosamine Sulfate and Glucosamine Hydrochloride

17.     Glucosamine is one of the most common dietary supplements available. As of 2012, Glucosamine and Chondroitin in combination were the second most used natural products by U.S. adults. "Using Dietary Supplements Wisely," National Center for Complementary and Integrative Health, https://www.nccih.nih.gov/health/using-

dietary-supplements-wisely (last visited April 1, 2020). The market has only grown since then.

18.     Consumers generally take glucosamine supplements in order to help treat the symptoms of joint pain, osteoarthritis, and rheumatoid arthritis, or to preserve joint health.

19.     These supplements are commercially available in the forms of Glucosamine Sulfate, Glucosamine Hydrochloride, and N-acetyl glucosamine.

20.     Glucosamine Sulfate has demonstrated clinical effectiveness for certain conditions, while Glucosamine Hydrochloride and other forms of glucosamine have not. Indeed, in a 2019 recommendation, a working group of the European Society for Clinical and Economic Aspects of Osteoporosis, Osteoarthritis and Musculoskeletal Diseases stated that it "affords a strong recommendation to the use of prescription crystalline glucosamine sulfate (pCGS) as Step 1 long-term background therapy for the management of knee [osteoarthritis], *and discourages the use of other glucosamine formulations*." Bruyère *et al.*, "An updated algorithm recommendation for the management of knee osteoarthritis from the European Society for Clinical and Economic Aspects of Osteoporosis, Osteoarthritis and Musculoskeletal Diseases (ESCEO)," *Seminars in Arthritis and Rheumatism*, Vol. 49, Issue 3, pp. 337-50 (Dec. 2019) (emphasis added).  While the evidence in favor of Glucosamine Sulfate instead was "unequivocal," several studies showed that many products labeled as Glucosamine Sulfate in fact contained Glucosamine Hydrochloride "with the addition of sodium sulfate to get a misleading 'sulfate' labeling." *Id.* at 6.

21.     The National Institutes of Health advises that there "are several kinds of glucosamine products. The most research showing benefit is for products that contain glucosamine sulfate. Products that contain glucosamine hydrochloride do not seem to work as well." https://medlineplus.gov/druginfo/natural/807.html (last visited May 29, 2020)  Indeed, the National Institutes of Health further advises that "[g]lucosamine hydrochloride is used for osteoarthritis, rheumatoid arthritis, glaucoma, a jaw disorder

called temporomandibular disorder (TMD), joint pain, and many other conditions, ***but there is no good scientific evidence to support these uses***. . . . Some researchers believe that glucosamine hydrochloride might not work as well as glucosamine sulfate. They think ***the 'sulfate' part of glucosamine sulfate is the important factor*** because sulfate is needed by the body to produce cartilage." https://medlineplus.gov/druginfo/natural/747.html (last visited May 29, 2020) (emphasis added).

22.    Similarly, the Mayo Clinic notes: "[t]here are several forms of glucosamine, including glucosamine sulfate, glucosamine hydrochloride and N-acetyl glucosamine. These supplements are not considered interchangeable." https://www.mayoclinic.org/drugs-supplements-glucosamine/art-20362874 (last visited May 29, 2020).

23.    It is widely accepted that while Glucosamine Sulfate and Glucosamine Hydrochloride "have some similarities… they may not have the same effects when taken as a dietary supplement.  Most of the scientific research on glucosamine has involved glucosamine sulfate." https://www.webmd.com/vitamins/ai/ingredientmono-807/glucosamine-sulfate (last visited March 31, 2020). "Some products in the US that are labeled glucosamine sulfate are actually glucosamine hydrochloride with added sulfate. This product will likely have different effects than one containing glucosamine sulfate…Some researchers believe that glucosamine hydrochloride might not work as well as glucosamine sulfate." https://www.webmd.com/vitamins/ai/ingredientmono-747/glucosamine-hydrochloride (last visited March 31, 2020).

24.    Accordingly, the common perception of Glucosamine Sulfate is that it performs better than Glucosamine Hydrochloride or misleading products masquerading as Glucosamine Sulfate.

25.    Private companies have picked up this message and promote Glucosamine Sulfate over Glucosamine Hydrochloride.

**Plaintiff's Experience with Defendants' Product**

26.    Defendants Nutra and/or IVC manufacture and/or distribute products that are represented to include Glucosamine Sulfate to Non-party GNC and other retailers, who sell such products to the public.

27.    Displayed prominently on the label of many such products are the words "Glucosamine Sulfate" and a number representing each serving's Glucosamine Sulfate content in milligrams.

28.    The label of many such bottles also includes a Supplement Facts panel, which states that each serving size of one capsule contains "d-Glucosamine Sulfate, 2NaCl" and "Sodium," or "d-Glucosamine Sulfate, 2KCl." The labels of these products in no way suggest that the product contains Glucosamine Hydrochloride in any way, shape, or form.

29.    Accordingly, a reasonable person would believe that the contents of the bottles contain, exclusively, the ingredients listed on the label, specifically, Glucosamine Sulfate.

30.    Upon information and belief, Defendant Nutra's and/or Defendant IVC's Glucosamine Sulfate Products are manufactured and/or supplied by Defendants Nutra and/or IVC for the purpose of marketing and sale to consumers by non-party GNC and other brands and/or retailers.

31.    Upon information and belief, Defendants Nutra and IVC manufacture and/or distribute other dietary supplements labeled as containing Glucosamine Sulfate to non-party GNC and other brands and/or retailers for sale to consumers in California and nationwide.  Upon information and belief, IVC manufactures a product for at least one retailer other than non-party GNC that represents that it contains Glucosamine Sulfate yet testing shows that this other product also does not contain Glucosamine Sulfate.

32.    Plaintiff has purchased bottles of non-party GNC's private-label

CLASS ACTION COMPLAINT

Glucosamine Sulfate Products over the past four years, with the belief that the product labels accurately represented the contents of the packaged supplements.  He did so in hopes of preserving the health of his joints.

33.    In or around May 2019, Plaintiff purchased a bottle of "Glucosamine Sulfate 550" from the GNC Atlantic Square storefront in Monterey Park, CA 91754.

34.    In March 2020, Plaintiff's counsel sent some of the contents of the bottle of "Glucosamine Sulfate 550" that Plaintiff had purchased, and some of which he had consumed, to a laboratory for analysis.  The lab's "Report of Analysis" concluded that the primary composition of the capsules consisted of Glucosamine Hydrochloride and Sodium Sulfate. The analysis found no trace of Glucosamine Sulfate, contrary to the claims on the product label.

35.    The lab's analysis, which used Fourier-transform infrared spectroscopy to identify isolated crystals in the "Glucosamine Sulfate 550" capsules, did not detect Glucosamine Sulfate. Other available tests that may be used to detect the presence or amount of glucosamine, such as High-Performance Liquid Chromatography with FMOC-Su Derivatization, are not appropriate or reliable because they fail to distinguish between Glucosamine Sulfate and Glucosamine Hydrochloride. FITR has been used in academic literature to distinguish the Glucosamine Sulfate forms. *See, e.g.*, M. Foote & M. Mullholland, "Classification of chondroitin sulfate A, chondroitin sulfate C, glucosamine hydrochloride and glucosamine 6 sulfate using chemometric techniques," 38 J. Pharmaceutical and Biomedical Anal. 397 (2005) (using FITR to distinguish between Glucosamine Sulfate and Glucosamine Hydrochloride, inter alia).

36.    To confirm the lab's results, in or around late May or early June 2020, Plaintiff's counsel separately purchased two bottles of GNC-brand Glucosamine Sulfate (500 mg) from non-party GNC via its website. *See* https://www.gnc.com/joint-support-formulas/085423.html. Plaintiff's counsel separately sent some of the contents of both bottles to the same laboratory that had analyzed a sample from the contents of the

bottle of "Glucosamine Sulfate 550" that Plaintiff had purchased.  The two bottles had different lot numbers from both each other and the bottle that Plaintiff had purchased.

37.     As with the sample from the bottle that Plaintiff had purchased, both samples of GNC brand Glucosamine Sulfate (500 mg) that Plaintiff's counsel had sent to the lab consisted of Glucosamine Hydrochloride and Sodium Sulfate.   Both analyses, which also used Fourier-transform infrared spectroscopy, found no trace of Glucosamine Sulfate, contrary to the claims on the product labels.

38.     It is not practicable for all consumers of Glucosamine Sulfate Products to determine the provenance of each bottle of the product, particularly the individual manufacturing lot that the bottle came from.

39.     Plaintiff suffered damage and detriment as a result of Defendants' misrepresentations.  Plaintiff purchased "Glucosamine Sulfate 550," one of Defendants' Glucosamine Sulfate Products, because he believed it contained Glucosamine Sulfate. Had the product label truthfully disclosed that it did not contain Glucosamine Sulfate, Plaintiff would not have purchased the product.

40.     Furthermore, products containing Glucosamine Sulfate demand a premium on top of cost.

41.     As a result of the uncertainty regarding the contents of Glucosamine Sulfate Products, Plaintiff is, as yet, unwilling to purchase the products again. However, Plaintiff might consider doing so if he were assured that the product label was truthful and the product bottle actually contained Glucosamine Sulfate, as represented.

42.     To date Nutra and/or IVC continue to produce Glucosamine Sulfate Products, touting the same core compound, Glucosamine Sulfate.

43.     Consumers cannot afford to have each and every purchase of Glucosamine Sulfate Products lab-tested. Plaintiff, and others similarly situated, continue to be harmed, having no sustainable means of verifying the contents of the

1  Glucosamine Sulfate Products.

2  **CLASS ACTION ALLEGATIONS**

3      44.    Plaintiff brings this suit as a class action on behalf of himself and all other

4  similarly situated pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3).

5      45.    Plaintiff seeks to represent the following Classes:

6          a.  **Nationwide Class:** All persons in the United States who purchased a

7              dietary supplement labeled as containing Glucosamine Sulfate sold,

8              supplied, and/or manufactured by Defendant(s) other than for purposes

9              of resale and within the applicable statutes of limitations ("Nationwide

10             Class Period").

11         b.  **California Class (subclass)**: All persons in California who purchased a

12             dietary supplement labeled as containing Glucosamine Sulfate sold,

13             supplied, and/or manufactured by Defendant(s) other than for purposes

14             of resale and within the applicable statutes of limitations ("California

15             Class Period"; together with the Nationwide Class Period, the "Class

16             Periods").

17     46.    Excluded from the Classes are Defendants, their parents, subsidiaries and

18 affiliates, directors and officers.

19     47.    The members of the Classes are so numerous that joinder is

20 impracticable. It is believed that at a minimum, thousands of persons nationwide

21 purchased Glucosamine Sulfate Products during the Class Periods.  Moreover,

22 thousands more will continue to purchase the products if Defendants' practices are not

23 stopped. The precise number of Class members and their identities are unknown to

24 Plaintiff at this time but may be determined through discovery.  Class members may

25 be notified of the pendency of this action by mail, email, and/or publication through,

26 among other things, the distribution records of Defendants (and, to the extent

27 applicable, third party retailers and vendors).

28

CLASS ACTION COMPLAINT

48.     Plaintiff's respective claims are typical of the claims of the Nationwide Class and the California Class: he purchased a dietary supplement labeled Glucosamine Sulfate sold, supplied, and/or manufactured by Defendant(s) during the Class Periods and sustained damages as a result of Defendants' conduct.

49.     Plaintiff will fairly and adequately represent and protect the interests of the other Class members for purposes of Federal Rule of Civil Procedure 23(a)(4). Plaintiff has no interests antagonistic to those of other Class members. Plaintiff is committed to the vigorous prosecution of this action and has retained counsel experienced in litigation of this nature.

50.     Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individual members of the Classes, including, but not limited to:

    a.  Whether Defendants' Glucosamine Sulfate Products contain Glucosamine Sulfate;

    b.  Whether Defendants represented that their Glucosamine Sulfate Products contained Glucosamine Sulfate, when they did not;

    c.  Whether Defendants' acts and practices in connection with the promotion and sale of products labeled as containing Glucosamine Sulfate violated the California UCL, CLRA, or FAL;

    d.  Whether Defendants were unjustly enriched as a result of Defendants' conduct;

    e.  Whether Defendants' conduct damaged members of the Classes and, if so, the measure of those damages;

    f.  Whether Defendants' acts and practices in connection with the production, manufacture, promotion and/or sale of Glucosamine Sulfate Products should be enjoined; and

g. Whether the California UCL, CLRA, or FAL should apply to all respective Nationwide and/or California Class members.

51.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the respective Class members to seek redress for the wrongful conduct alleged. Plaintiff knows of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

52.   Class certification is also appropriate under Federal Rule of Civil Procedure 23(b)(2) because the Defendants have acted on grounds that apply generally to the Classes, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Classes as a whole.

53.   Class members have suffered and will suffer irreparable harm and damages as a result of Defendants' wrongful conduct.

## CAUSES OF ACTION

### COUNT I
**Violations of the California Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(On Behalf of the California Class)**
**(Against Defendant Nutra)**

54.   Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 to 53.

55.   Plaintiff brings this claim on behalf of himself and the California Class.

56.   Plaintiff asserts this claim for unlawful, unfair, and fraudulent business practices; and unfair, deceptive, untrue and misleading advertising.

57.   Defendant Nutra's conduct is "unlawful" under the UCL because it violates the California Legal Remedies Act (as discussed below) and the Food, Drug,

and Cosmetic Act ("FDCA") by misbranding products labeled as containing Glucosamine Sulfate.

58.    Defendant Nutra's conduct is "unfair" under the UCL because it is immoral, unscrupulous, unethical, oppressive, and substantially injurious to California consumers of products labeled as containing Glucosamine Sulfate by representing they contain Glucosamine Sulfate when they do not.

59.    Defendant Nutra's conduct is "fraudulent" because Plaintiff, the California Class, and the public generally are likely to be deceived by Defendant Nutra's misbranding of products labeled as containing Glucosamine Sulfate by representing they contain Glucosamine Sulfate when they do not.

60.    Defendant Nutra's continuing course of conduct establishes unfair, deceptive, untrue and misleading advertising by misbranding products labeled as containing Glucosamine Sulfate as containing Glucosamine Sulfate when they do not. Plaintiff was deceived into purchasing a product he otherwise would not have, causing him to suffer economic harm by paying more than he otherwise would have had the product been accurately labeled.

61.    Plaintiff and the other members of the California Class have been and continue to be injured as a direct and proximate result of Defendant Nutra's violations of the UCL.

62.    Plaintiff is entitled to pursue a claim against Defendant Nutra on behalf of the California Class pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17205 for restitution, disgorgement, and other equitable relief to remedy Defendant Nutra's unlawful and unfair practices, and to move under Cal. Code Civ. Proc. § 1021.5 for costs and attorneys' fees.

63.    Plaintiff also seeks punitive damages under Cal. Civ. Code § 3294 because Defendant Nutra is guilty of fraud and malice by intentionally misbranding products labeled as containing Glucosamine Sulfate and by intending to cause injury

to the Plaintiff and the California Class.

## COUNT II
### Violations of the California Consumers Legal Remedies Act
### Cal. Civ. Code §§ 1750, *et seq.*
### (On Behalf of the California Class)
### (Against Defendant Nutra)

64. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 to 53.

65. Plaintiff brings this claim on behalf of himself and the California Class.

66. Plaintiff is a "consumer" as defined in Cal. Civ. Code § 1761(d).

67. Defendant is a "person" as defined in Cal. Civ. Code § 1761(c).

68. Glucosamine Sulfate Products constitute "goods" under Cal. Civ. Code § 1761(a).

69. Plaintiff's purchase was a "transaction" under § 1761(e).

70. The CLRA prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale . . . of goods… to any consumer," which occurs when, among other instances, a person: "Represent[s] that goods or services have. . . characteristics, ingredients, uses, benefits, or quantities that they do not have," § 1770(a)(5); and "Advertis[es] goods or services with intent not to sell them as advertised," § 1770(a)(9).

71. Plaintiff and the other members of the California Class have been, and continue to be, injured as a direct and proximate result of Defendant Nutra's violations of the CLRA.

72. Plaintiff is entitled to pursue a claim against Defendant Nutra on behalf of the California Class to enjoin Defendant Nutra from continuing its unfair or deceptive acts or practices under Cal. Civ. Code § 1780(a) and § 1781, as well as to pursue costs and attorneys' fees under § 1780(e).

73. Under the requirements of California Civil Code §1782(a), Plaintiff is

CLASS ACTION COMPLAINT

serving on Defendant Nutra, a CLRA notice letter.  If Defendant Nutra does not rectify these issues within the time period provided by the CLRA, Plaintiff will amend this Complaint to assert claims for additional relief.

### COUNT III
**Violations of the California False Advertising Law**
**Cal. Bus. & Prof. Code §§ 17500,** *et seq.*
**(On Behalf of the California Class)**
**(Against Defendant Nutra)**

74.   Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 to 53.

75.   Plaintiff brings this claim on behalf of himself and the California Class.

76.   Plaintiff asserts this claim for the unlawful inducement into an obligation and purchase of a Glucosamine Sulfate Product due to Defendant Nutra's statements in advertising that are untrue and misleading, and of which Defendant Nutra knew or should have known were untrue and misleading.   Defendant Nutra misbranded products labeled as containing Glucosamine Sulfate by representing that they contain Glucosamine Sulfate when they do not.  This representation is objectively false and therefore likely to deceive members of the public.

77.   Plaintiff and the other members of the California Class have been and continue to be injured as a direct and proximate result of Defendant Nutra's violations of the FAL.

78.   Plaintiff is entitled to pursue a claim against Defendant Nutra on behalf of the California Class pursuant to Cal. Bus. Prof. Code § 17535 for restitution and equitable relief to remedy Defendant Nutra's unlawful and unfair practices, and to move under Cal. Code Civ. Proc. § 1021.5 for costs and attorneys' fees.

79.   Plaintiff also seeks punitive damages under Cal. Civ. Code § 3294 because Defendant Nutra is guilty of fraud and malice by intentionally misbranding products labeled as containing Glucosamine Sulfate and by intending to cause injury

to Plaintiff and the California Class.

## COUNT IV
### Breach of Warranty
**(On Behalf of the Nationwide Class,**
**and in the alternative, the California Class)**
**(Against Defendant Nutra)**

80.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 to 53.

81.     Defendant Nutra warranted in its labeling, manufacturing, and/or supplying of products labeled as containing Glucosamine Sulfate to brands and/or retailers in California and nationwide that such products contain Glucosamine Sulfate.

82.     Plaintiff and members of the Classes purchased such products, which were labeled as containing Glucosamine Sulfate, based on this warranty.

83.     Products labeled as containing Glucosamine Sulfate manufactured and/or supplied by Defendant Nutra for ultimate retail sale to consumers did not and do not, in fact, contain Glucosamine Sulfate.

84.     Plaintiff and the other members of the Classes were injured and suffered damages as a direct and proximate result of Defendant Nutra's breach of warranty because: (1) they purchased products labeled as containing Glucosamine Sulfate based on Nutra's misleading product label; and (2) the products did not have the composition, attributes, characteristics, or value that Defendant Nutra promised.

## COUNT V
### Unjust Enrichment and/or Restitution
**(On Behalf of the Nationwide Class,**
**and in the alternative, the California Class)**
**(Against Defendant Nutra)**

85.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 to 53.

86.     Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class and, in the alternative, the California Class against Defendant

Nutra.

87.     Plaintiff alleges that contrary to their labeling, Defendant Nutra's products labeled as containing Glucosamine Sulfate do not contain Glucosamine Sulfate.

88.     By means of Defendant Nutra's wrongful conduct alleged herein, Defendant Nutra knowingly sold dietary supplements that were mislabeled in a manner that was unfair, unconscionable, and oppressive.

89.     Defendant Nutra knowingly received and retained wrongful benefits and funds from Plaintiff and members of the Classes. Therefore, Defendant acted with conscious disregard for the rights of Plaintiff and members of the Classes.

90.     As a result of Defendant Nutra's wrongful conduct as alleged herein, Defendant Nutra has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Classes.

91.     Defendant Nutra's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

92.     Under the common law doctrine of unjust enrichment, it is inequitable for Defendant Nutra to be permitted to retain the benefits it received, and is still receiving, without justification, from the imposition of fees and rates on Plaintiff and members of the Classes in an unfair, unconscionable, and oppressive manner. Defendant's retention of such funds, under circumstances making it inequitable to do so, constitutes unjust enrichment.

93.     The financial benefits derived by Defendant Nutra rightfully belong to Plaintiff and members of the Classes.  Defendant Nutra should be compelled to disgorge in a common fund for the benefit of Plaintiff and members of the Classes all wrongful or inequitable proceeds received by it.

94.     A constructive trust should be imposed upon all wrongful or inequitable proceeds received by Defendant Nutra traceable to Plaintiff and members of the

CLASS ACTION COMPLAINT

1    Classes.

2        95.    Plaintiff and members of the Classes have no adequate remedy at law.

3    **COUNT VI**

4    **Violations of the California Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200,** *et seq.*

5    **(On Behalf of the Nationwide Class,**
**and in the alternative, the California Class)**

6    **(Against Defendant IVC)**

7

8        96.    Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 to 53.

9

10       97.    Plaintiff brings this claim on behalf of herself and the Nationwide Class, and in the alternative, the California Class.

11

12       98.    Plaintiff asserts this claim for unlawful, unfair, and fraudulent business practices; and unfair, deceptive, untrue and misleading advertising.

13

14       99.    Defendant IVC's conduct is "unlawful" under the UCL because it violates the California Legal Remedies Act (as discussed below) and the Food, Drug, and Cosmetic Act ("FDCA") by misbranding products labeled as containing Glucosamine Sulfate.

15

16

17       100.    Defendant IVC's conduct is "unfair" under the UCL because it is immoral, unscrupulous, unethical, oppressive, and substantially injurious to consumers of products labeled as containing Glucosamine Sulfate that were and are manufactured and/or supplied by Defendant IVC by representing that they contain Glucosamine Sulfate when they do not.

18

19

20

21

22       101.    Defendant's conduct is "fraudulent" because Plaintiff, the Nationwide Class, the California Class, and the public generally are likely to be deceived by Defendant IVC's misbranding of its Glucosamine Sulfate products by representing that they contain Glucosamine Sulfate when they do not.

23

24

25

26       102.    Defendant IVC's continuing course of conduct establishes unfair, deceptive, untrue and misleading advertising by misbranding its Glucosamine Sulfate

27

28

18

products as containing Glucosamine Sulfate when they do not.

103.   Plaintiff was deceived into purchasing a product he otherwise would not have, causing him to suffer economic damages equal to the purchase price paid, or another amount to be proven at trial in an amount to be determined at trial.

104.   Plaintiff and the other members of the Class have been and continue to be injured as a direct and proximate result of Defendant IVC's violations of the UCL.

105.   Plaintiff is entitled to pursue a claim against Defendant IVC on behalf of the Class pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17205 for restitution, disgorgement, and other equitable relief to remedy Defendant's unlawful and unfair practices, and to move under Cal. Code Civ. Proc. § 1021.5 for costs and attorneys' fees.

106.   Plaintiff also seeks punitive damages under Cal. Civ. Code § 3294 because Defendant IVC is guilty of fraud and malice by intentionally misbranding its Glucosamine Sulfate products and by intending to cause injury to the Plaintiff and the Nationwide and/or California Class.

### COUNT VII
**Violations of the California Consumers Legal Remedies Act**
**Cal. Cive. Code §§ 1750, *et seq*.**
**(On Behalf of the Nationwide Class,**
**and in the alternative, the California Class)**
**(Against Defendant IVC)**

107.   Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 to 53.

108.   Plaintiff brings this claim on behalf of herself and the Nationwide Class, and in the alternative, the California Class.

109.   Plaintiff is a "consumer" as defined in Cal. Civ. Code § 1761(d).

110.   Defendant is a "person" as defined in Cal. Civ. Code § 1761(c).

111.   Glucosamine Sulfate constitutes "goods" under Cal. Civ. Code § 1761(a).

112.   Plaintiff's purchase was a "transaction" under § 1761(e).

113.   The CLRA prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale . . . of goods. . . to any consumer," which occurs when, *among other instances*, a person: "Represent[s] that goods or services have . . . characteristics, ingredients, uses, benefits, or quantities that they do not have," § 1770(a)(5); and "Advertis[es] goods or services with intent not to sell them as advertised," § 1770(a)(9).

114.   Plaintiff and the other members of the Class have been, and continue to be, injured as a direct and proximate result of Defendant IVC's violations of the CLRA.

115.   Plaintiff is entitled to pursue a claim against Defendant IVC on behalf of the Class to enjoin Defendant IVC from continuing its unfair or deceptive acts or practices under Cal. Civ. Code § 1780(a) and § 1781, as well as to pursue costs and attorneys' fees under § 1780(e).

116.   Under the requirements of California Civil Code §1782(a), Plaintiff will serve on Defendant IVC a CLRA notice letter.  If Defendant IVC does not rectify these issues within the time period provided by the CLRA, Plaintiff will amend this Complaint to assert claims for additional relief.

## COUNT VIII
**Violations of the California False Advertising Law**
**Cal. Bus. & Prof. Code §§ 17500, *et seq.***
**(On Behalf of the Nationwide Class,**
**and in the alternative, the California Class)**
**(Against Defendant IVC)**

117.   Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 to 53.

118.   Plaintiff brings this claim on behalf of herself and the Nationwide Class, and in the alternative, the California Class.

119.   Plaintiff asserts this claim for the unlawful inducement into an obligation

and purchase of products that represent that they contain Glucosamine Sulfate that were and are manufactured and/or supplied by Defendant IVC due to Defendant IVC's statements in advertising that are untrue and misleading, and of which Defendant IVC knew or should have known were untrue and misleading.  Defendant IVC misbranded its products that are labeled as containing Glucosamine Sulfate by representing that they contain Glucosamine Sulfate when they do not.   These representations are objectively false and therefore likely to deceive members of the public.

120.   Plaintiff and the other members of the Class have been and continue to be injured as a direct and proximate result of Defendant IVC's violations of the FAL.

121.   Plaintiff is entitled to pursue a claim against Defendant IVC on behalf of the Class pursuant to Cal. Bus. Prof. Code § 17535 for restitution and equitable relief to remedy Defendant IVC's unlawful and unfair practices, and to move under Cal. Code Civ. Proc. § 1021.5 for costs and attorneys' fees.

122.   Plaintiff also seeks punitive damages under Cal. Civ. Code § 3294 because Defendant is guilty of fraud and malice by intentionally misbranding Glucosamine Sulfate and by intending to cause injury to the Plaintiff and the Class.

**<u>COUNT IX</u>**
**Breach of Warranty**
**(On Behalf of the Nationwide Class,**
**and in the alternative, the California Class)**
**(Against Defendant IVC)**

123.   Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 to 53.

124.   Defendant IVC warranted in its labeling, manufacturing, and/or supplying of products labeled as containing Glucosamine Sulfate to retailers in California and nationwide that the products contain Glucosamine Sulfate.

125.   Plaintiff and members of the Classes purchased Glucosamine Sulfate based on this warranty.

126.   Product labeled Glucosamine Sulfate manufactured and/or supplied by Defendant for retail sale to consumers does not, in fact, contain Glucosamine Sulfate.

127.   Plaintiff and the other members of the Classes were injured and suffered damages as a direct and proximate result of Defendant IVC's breach of warranty because: (1) they purchased Glucosamine Sulfate based on Defendant IVC's misleading product label; and (2) the product did not have the composition, attributes, characteristics, or value that Defendant IVC promised.

## COUNT X
### Unjust Enrichment and/or Restitution
### (On Behalf of the Nationwide Class,
### and in the alternative, the California Class)
### (Against Defendant IVC)

128.   Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 to 53.

129.   Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class, and in the alternative, the California Class.

130.   Plaintiff alleges that products that represent that they contain Glucosamine Sulfate that were and are manufactured and/or supplied by Defendant IVC for retail sale to consumers do not contain Glucosamine Sulfate.

131.   By means of Defendant IVC's wrongful conduct alleged herein, Defendant IVC knowingly sold dietary supplements that were mislabeled in a manner that was unfair, unconscionable, and oppressive.

132.   Defendant IVC knowingly received and retained wrongful benefits and funds from Plaintiff and members of the Classes. Therefore, Defendant IVC acted with conscious disregard for the rights of Plaintiff and members of the Classes.

133.   As a result of Defendant IVC's wrongful conduct as alleged herein, Defendant IVC has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Classes.

134. Defendant IVC's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

135. Under the common law doctrine of unjust enrichment, it is inequitable for Defendant IVC to be permitted to retain the benefits it received, and is still receiving, without justification, from the imposition of fees and rates on Plaintiff and members of the Classes in an unfair, unconscionable, and oppressive manner. Defendant IVC's retention of such funds, under circumstances making it inequitable to do so, constitutes unjust enrichment.

136. The financial benefits derived by Defendant IVC rightfully belong to Plaintiff and members of the Classes. Defendant IVC should be compelled to disgorge in a common fund for the benefit of Plaintiff and members of the Classes all wrongful or inequitable proceeds received by them.

137. A constructive trust should be imposed upon all wrongful or inequitable proceeds received by Defendant IVC traceable to Plaintiff and members of the Classes.

138. Plaintiff and members of the Classes have no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, requests that the Court award the following relief:

a. Certify this action as a class action pursuant to Federal Rule of Civil Procedure 23, appoint Plaintiff as representative of the Classes, and designate the undersigned as Class counsel;

b. Award Plaintiff and the Classes monetary damages;

c. Award Plaintiff and the Classes equitable, declaratory, and/or injunctive relief, as requested herein;

d. Award Plaintiff and the Classes restitution and/or disgorgement;

e. Award Plaintiff and the Classes punitive damages;

CLASS ACTION COMPLAINT

1  f. Grant Plaintiff and the Classes payment of the costs of prosecuting this

2    action, including expert fees and expenses;

3  g. Grant Plaintiff and the Classes payment of reasonable attorneys' fees;

4  h. Grant such other relief as the Court may deem just and proper.

5        **<u>DEMAND FOR JURY TRIAL</u>**

6 Plaintiff and the Classes demand a trial by jury on all issues so triable.

7

8 DATED:  July 22, 2020     Respectfully submitted,

9

             By: */s/ Jonathan M. Rotter*

10          Jonathan M. Rotter (SBN 234137)

11         Danielle L. Manning (SBN 313272)

          **GLANCY PRONGAY & MURRAY LLP**

12         1925 Century Park East, Suite 2100

13         Los Angeles, California 90067

          Telephone: (310) 201-9150

14         Facsimile: (310) 201-9160

15         Email: jrotter@glancylaw.com

          Email: dmanning@glancylaw.com

16

17         OF COUNSEL:

18         Carl L. Stine

19         Matthew Insley-Pruitt

          **WOLF POPPER LLP**

20         845 Third Avenue

21         New York, NY  10022

          Telephone: (212) 759-4600

22         Facsimile: (212) 486-2093

23         Email: cstine@wolfpopper.com

          Email: minsley-pruitt@wolfpopper.com

24

25         *Attorneys for Plaintiff and the Proposed Class*

26

27

28